**SO ORDERED.**

**SIGNED this 02 day of July, 2007.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

**IN RE:**

    **KENNETH SCOTT LAWRENCE**

                **Debtor.**                          **Case No. 05-09104-8-JRL**

    **ALGERNON L. BUTLER, III, TRUSTEE**
    **IN BANKRUPTCY FOR KENNETH**
    **SCOTT LAWRENCE**

                **Plaintiff,**

    **vs.**                                    **Adversary Proceeding No.:**
                                           **06-00051-8-AP**

    **PORTIA A. LAWRENCE**

                **Defendant.**

_____

## ORDER

The matter before the court is the trustee's complaint against Portia Lawrence to

determine whether a transfer made by the debtor to Mrs. Lawrence should be avoided as a

fraudulent transfer pursuant to 11 U.S.C. § 548 or, in the alternative, as a preference under 11

U.S.C. § 547. On May 16, 2007, the court conducted a trial in Wilmington, North Carolina.

Pursuant to Federal Rule of Bankruptcy Procedure 7052, this order contains findings of fact and

conclusions of law based thereon.

## JURISDICTION AND PROCEDURE

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## FINDINGS OF FACTS

1.      On October 12, 2005, the debtor filed for relief under chapter 7 of the Bankruptcy Code.

2.      On October 13, 2005, Algernon L. Butler, III was appointed chapter 7 trustee.

3.      Prior to September 9, 2005, the debtor claimed that he was entitled to compensation and payment of monies from GMAC Insurance Company ("GMAC").

4.      On September 9, 2005, the debtor and GMAC entered into a settlement agreement of the debtor's claim for compensation and payment.

5.      The agreement provided that GMAC would pay the debtor $23,000 (the "Settlement Proceeds").

6.      The debtor had a checking account and a savings account at Bank of America. Mrs. Lawrence, the debtor's wife, was not a signatory on these accounts, but the debtor frequently gave her permission to use his ATM card and sign his name to checks.

7.    Mrs. Lawrence had a checking account and a savings accounts at East Coast

Credit Union. The debtor's name was never on these accounts, and the debtor

does not have access to them.

8.    Prior to receiving the Settlement Proceeds, the debtor inquired into the impact the

funds would have on his future bankruptcy filing. The debtor was informed by his

bankruptcy counsel that the Settlement Proceeds were exempt from his

bankruptcy, and he could spend them however he wanted. Furthermore, the

debtor was told by counsel that it did not matter which bank account the funds

were deposited into as they were exempt.

9.    If the Settlement Proceeds were deposited into either of Mrs. Lawrence's bank

accounts, East Coast Credit Union would allow access to them after three days of

deposit.

10.    If the Settlement Proceeds were deposited into either of the debtor's bank

accounts, Bank of America would only allow access to the Settlement Proceeds

after ten days of deposit.

11.    Sometime between September 9 and September 15, 2005, the Settlement Proceeds

were disbursed by GMAC.

12.    On September 15, 2005, the Settlement Proceeds were deposited into Mrs.

Lawrence's savings account.

13.    The debtor was insolvent on the date the Settlement Proceeds were transferred.

14.    A few days after the Settlement Proceeds were deposited, $9500 of the funds

were given to the debtor. The debtor used the $9500 to pay his back child support

payments and purchase truck parts in order to repair the truck he uses to commute to and from his job.

15.    Within twenty days of the Settlement Proceeds becoming available, an additional $400 of the funds was given to the debtor.

16.    Prior to receiving the funds, the debtor and Mrs. Lawrence had purchased furniture for their residence, and American General held a secured claim on that furniture. Fifteen hundred dollars of the funds were used to pay off the American General debt.

17.    An additional $6180 of the Settlement Proceeds was spent on food, utilities, pets, household goods, appliances, taxes, gas, a family vacation, and home maintenance.

18.    Another $2150 of the Settlement Proceeds was use to pay credit card debts that Mrs. Lawrence had incurred for household purposes.

19.    At the closing of the loan on the couple's residence, Mrs. Lawrence had borrowed money from her uncle to pay the home owners' insurance, and $600 of the Settlement Proceeds was used to repay that debt.

20.    Approximately $560 of the Settlement Proceeds was used solely for Mrs. Lawrence's benefit.

## CONCLUSIONS OF LAW

The trustee contends that the deposit of the Settlement Proceeds into Mrs. Lawrence's bank account is avoidable either as a fraudulent transfer or as a preferential transfer. The trustee first alleges that the transfer was a fraudulent transfer pursuant to § 548(a)(1)(A) because it was

made by the debtor with actual intent to hinder, delay, or defraud his creditors. However, even if

the debtor did not have that actual intent to defraud his creditors, constructive fraud can be found

pursuant to § 548(a)(1)(B) because the debtor received less than reasonably equivalent value

when he transferred the Settlement Proceeds to his wife's bank account. Furthermore, even if

there is not a fraudulent transfer of the entire Settlement Proceeds, the trustee argues he should

be able to recover $3000 under § 547 as a preferential transfer.

### *Fraudulent Transfer Claims*

Pursuant to 11 U.S.C. § 548, the trustee may avoid transfers "of an interest of the debtor

in property, or any obligation incurred by the debtor, that was made or incurred on or within one

year before the date of the filing of the petition"[1] under limited circumstances. This section

prevents debtors from placing certain assets beyond the reach of their creditors. Towers v.

United States, (*In* re. Feiler), 218 B.R. 957, 962 (Bankr. N.D. Cal. 1998). It does this by allowing

a trustee to recover two types of fraudulent transfers: "those that are made with an actual intent

to hinder, delay or defraud, and those that are constructively fraudulent because the debtor did

not receive a reasonably equivalent value in an exchange which is made while or has the effect

of rendering the debtor insolvent." Whitaker v. Mortgage Miracles, Inc. (*In re* Summit Place,

LLC), 298 B.R. 62, 69 (Bankr. W.D.N.C. 2002).

### *Section 548(a)(1)(A)*

The trustee's first argument is that the debtor made the transfer to Mrs. Lawrence with

actual fraud pursuant to § 548(a)(1)(A). The section provides that:

---

[1] The debtor's bankruptcy case was filed prior to the effective date of the Bankruptcy
Abuse Prevention and Consumer Protection Act of 2005("BAPCPA"). Therefore, all citations to
the Code will be to the pre-BAPCPA language.

>   (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily–(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548(a)(1)(A). Therefore, under this section the debtor must actually possess an intent to hinder, delay, or defraud creditors at the time the transfer was made. _In re_ Summit Place, 298 B.R. at 69-70. The issue of intent "is a factual one to be determined by the court based on the facts and circumstances surrounding the transfer." Id. at 70.

In this case, the debtor testified that, prior to taking any action as to the Settlement Proceeds, he spoke with his attorney. He was correctly informed that the proceeds were exempt from his future bankruptcy, and he could use them as he wanted. The debtor also provided credible evidence that the Settlement Proceeds were placed in his wife's bank account only because the family needed the funds as soon as possible, and his wife's bank allowed access to the funds sooner then his bank would. Additionally, because of the debtor's past difficulties with money management, it was common practice in the debtor's household for his wife to pay the household bills, and it was convenient for the funds to be in her account.

Mrs. Lawrence and the debtor contend that they were informed by counsel that the Settlement Proceeds were exempt from the debtor's future bankruptcy. North Carolina law creates a statutory exemption for money recovered as compensation for personal injury. N.C. Gen. Stat. § 1C-1601(a)(8). There is no dispute that had the debtor deposited the Settlement Proceeds in his account and left them there he could have exempted them from his bankruptcy estate under North Carolina law. However, the fact that the transferred property could have been

6

exempted in bankruptcy is not a defense to a fraudulent transfer action. <u>Tavenner v. Smoot</u>, 257

F.3d 401, 407 (4th Cir. 2001).[2]

The Settlement Proceeds were not listed on the debtor's petition as they should have

been, but this is not enough to find that the debtor possessed an actual intent to hinder, delay, or

defraud any creditor. Courts have recognized that the "[a]ctual intent to hinder, delay or defraud

may be negated by a good faith reliance upon the advice of an attorney." <u>United States Tr. v.</u>

<u>Arnold</u> (<i>In re</i> <u>Arnold</u>), 2007 Bankr. LEXIS 1719, *10, 2007 WL 1501346, * 4 (Bankr. W.D. Va.

March 29, 2007), <i>see also</i> <u>United States v. Miller</u>, 658 F.2d 235, 237 (4th Cir. 1981) (discussing

the necessary elements of the reliance defense). This case is a clear example of a situation where

the debtor relied on his attorney's advice that certain property was exempt from his bankruptcy

estate. Based on that advice, the debtor proceeded to use the property as he wanted. The "facts

do not establish any improper intent to hinder, delay, or defraud creditors," but merely "an intent

to utilize available exemptions[.]" <u>Murphy v. Crater</u> (<i>In re</i> <u>Crater</u>), 286 B.R. 756, 758 (Bankr. D.

Ar. 2002).

The trustee, as the plaintiff, has the burden of proving the debtor's fraudulent intent.[3]

_____

[2] In <i>Tavenner</i>, the debtor received $217,000 from a personal injury settlement. The money was deposited in his personal account, and the debtor then transferred $210,000 into the corporate account of Glass Apple. <u>Tavenner</u>, 257 F.3d at 405. The stock of Glass Apple was owned solely by the debtor's wife and two children. <u>Id.</u> at 404. The court found that the debtor received nothing of material value in exchange for transferred funds. <u>Id.</u> 408. The court went on to state that, even though the debtor desired to provide for his family through the transferred funds, a "transfer motivated by love and affection does not constitute reasonably equivalent value for the purpose of 11 U.S.C. § 548." <u>Id.</u> In contrast, the debtor in this case, did receive material value in exchange for his transferred funds. He received food, shelter, household goods, a working truck he could use to commute to work, and the ability to pay his back child support.

[3] There is a split in authority regarding the standard of proof required by the trustee under § 548. Some courts apply the enhanced "clear and convincing" standard. <i>See</i> <u>In re</u> Summit Place,

7

Based on the undisputed facts, the trustee has failed to establish that the transfer was done with the intent to hinder, delay or defraud any creditors.  Therefore, the required elements of § 548(a)(1)(A) are not met.

*Section 548(a)(1)(B)*

Next, the trustee seeks to avoid the transfer of the Settlement Proceeds pursuant to § 548(a)(1)(B). The section provides, in part, that:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily. . . (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation . . . [.]

11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I). The transfers in this section are presumed fraudulent notwithstanding the fact that there is no proof of the debtor's actual intent to defraud. This "constructive intent" is determined based on the circumstances surrounding the transaction.

The parties in this case stipulated to the fact that the debtor was insolvent on the date the transfer was made or became insolvent as the result of the transfer. Therefore, the only issue for the court to determine is whether the debtor received less than reasonably equivalent value in exchange for the transfer. The analysis begins by determining if the debtor received any value in exchange for the Settlement Proceeds. If the debtor received value, the next step is to determine

---

298 B.R. at 70. Other courts state that the trustee only needs to establish the claim by a preponderance of the evidence. *See* Ivey v. Crown Memorial Park, LLC (*In re* Lee Memory Gardens, Inc.), 2006 Bankr. Lexis 664, *6-7, 2006 WL 996567, *2 (Bankr. M.D.N.C. April 16, 2006) (detailing the split in authority as to the standard of proof required under § 548). In this case, the trustee fails to meet even the preponderance of the evidence standard, so the court does not need to determine whether the enhanced clear and convincing standard is warranted.

whether the value received by the debtor is less than reasonably equivalent to the value transferred.

For purposes of § 548, value is defined as "property, or satisfying or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor." 11 U.S.C. § 548(d)(2)(A). In evaluating whether a debtor received reasonably equivalent value, a court may consider indirect benefits that the debtor received from someone other than the recipient of the payments. Harman v. First Am. Bank of Maryland (*In re* Jeffrey Bigelow Design Group, Inc.), 956 F.2d 479, 485 (4th Cir. 1992); Mellon Bank, N.A. v. Metro Commc'n, Inc., 945 F.2d 635, 646-47 (3d Cir. 1991). Rubin v. Manufacturers Hanover Trust Co., 661 F.2d 979, 991-92 (2d Cir. 1981).  The indirect benefit rule states:

> [A] debtor may sometimes receive "fair" consideration even though the consideration given for his property or obligation goes initially to a third person...[A]lthough "transfers solely for the benefit of third parties do not furnish fair consideration". . . , the transaction's benefit to the debtor "need not be direct; it may come indirectly through benefit to a third person." If the consideration given to the third person has ultimately landed in the debtor's hand, or if the giving of the consideration to the third person otherwise confers an economic benefit upon the debtor, then the debtor's net worth has been preserved, and [the statute] has been satisfied-provided of course, that the value of the benefit received by the debtor approximates the value of the property or obligation he has given up.

*In re* Jeffrey Bigelow,  956 F.2d at 485 (quoting Rubin, 661 F.2d at 991-92).

In this case, the truck that the debtor used to commute to and from work had recently stopped running, and the debtor needed money to repair it. By placing the money in Mrs. Lawrence's bank account, the debtor was able to have access to the funds sooner. Almost immediately after the funds became available, the debtor received $9500 of the transferred funds. He used those funds to fix the truck and pay the debtor's back child support payments. Over the course of the next month, the debtor received additional cash amounts, totaling at least $400. It is

clear that $9900 of the funds transferred to Mrs. Lawrence ultimately landed in the debtor's hands, and thus would qualify as an indirect benefit to the debtor.

The transferred funds were also used to pay for food, utilities, taxes, gas, a family vacation, home maintenance, and other household expenses. This category includes a $1500 payment to American General for furniture that had recently been purchased on credit and could have been repossessed had the debt not been paid. The debtor was a recipient of the food, utilities, gas, furniture, family vacation, and other household items purchased with the transferred funds. Thus, the debtor received economic benefit from the transferred funds because the funds were used to pay his and his families living expenses. *See* Schilling v. Montalvo (*In re* Montalvo), 333 B.R. 145, 150 (Bankr. W.D. Ky. 2005). The total amount spent in this category was approximately $7680 and can be classified as an indirect benefit to the debtor.

Because the facts show the debtor received benefits from the transferred funds, the court must determine whether the debtor received less than reasonably equivalent value in exchange for the transferred funds.  "Reasonably equivalent value is not susceptible to simple formulation. . . The focus is on the consideration received by the debtor, not on the value given by the transferee[.]" *In re* Jeffrey Bigelow, 956 F.2d at 484. The determination of reasonably equivalent value is a question of fact, and the court has considerable latitude in making that determination based on all the facts and circumstances surrounding the transaction. *In re* Summit Place, 298 B.R. at 73.

The trustee has the burden of establishing the element of "less than reasonably equivalent value." The trustee's original argument was that the debtor received no value from the transfer. In the alternative, even if the debtor received some value, the trustee calculated that at least $16,360

10

of the transferred funds did not benefit the debtor. The trustee's first argument fails to account for

the indirect benefits the debtor received from the transfer. As to the second argument, the trustee

does not contend that the value received by the debtor was different then the amounts paid for the

items or services purchased. Instead, the trustee reached his numerical value by placing the

purchases made by the debtor and Mrs. Lawrence in categories different then those determined by

the court. Specifically, the trustee did not attribute the truck repair and certain household

purchases as providing benefit to the debtor. The trustee failed to show that the value the debtor

received from the $9900 in cash, plus the food, utilities, taxes, gas, a family vacation, home

maintenance, and other household items was less then the purchase price of those items. The total

spent on those items was approximately $17,580, which is around 76% of the $23,000 transferred.

Some courts have held that a debtor who received less then 70% of the fair market value

of the property transferred did not receive reasonably equivalent value. *See* Durrett v. Washington

Nat'l Ins. Co., 621 F.2d 201 204 (5th Cir. 1980). Other courts provide for a less rigid approach

and consider all the facts and circumstances surrounding the transaction. *In re* Summit Place, 298

B.R. at 73. The trustee has failed to meet his burden under either test. In this case, the debtor

received more than 70% of the value of the property transferred.[4] Therefore, under the *Durrett*

rule the debtor would not have received less then reasonably equivalent value. Furthermore,

taking all the facts and circumstances surrounding this transaction, the court finds that the trustee

failed to establish that the value the debtor received was less than reasonably equivalent value.

The trustee has the burden to prove that the requirements of § 548(a)(1)(B) were met. The

---

[4]The court does not need to determine if the debtor received benefit from the other purchases made with the transferred funds, as the categories discussed by the court are sufficient to defeat the trustee's claim.

trustee was unable to prove that the debtor received less than reasonably equivalent value in exchange for the transfers. Thus, the trustee failed to establish a necessary element of his claim.

***Section 547***

The trustee's final argument is that the transfer should be avoided as a preference payment pursuant to 11 U.S.C. § 547(b).  Section 547 allows the trustee to recover certain preferential transfers made by the debtor in favor of specific creditors. Specifically, the section provides:

> [T]he trustee may avoid any transfer of an interest of the debtor in property-
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made-
>>> (A) on or within 90 days before the date of the filing of the petition;
>>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such creditor would receive if–
>>> (A) the case were a case under chapter 7 of this title;
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). According to this section, the person or entity that received the transfer or the benefits of the transfer must be a creditor of the debtor. The facts of this case do not support a finding that Mrs. Lawrence was a creditor of the debtor at the time the transfer was made.

Section 101 defines "creditor" as an  "(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(I) of this title; or (C) entity that has a community claim." 11 U.S.C. § 101(10). Therefore, the court

12

must determine if Mrs. Lawrence has a claim against the debtor as of the petition date. The

Bankruptcy Code defines a "claim" as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such a right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C § 101(5).

During the debtor's 341 meeting, the trustee inquired into what happened with the

Settlement Proceeds. Among other things, the debtor stated, "I paid my wife back some money

because there for . . . six months, I wasn't working at all." When asked about the exact amount

of money the debtor paid he wife, the debtor responded that it was about $3000. These

statements are the basis for the trustee's preferential transfer claim. At the trial, the debtor

clarified his previous statements. He explained that he had been out of work for an extended

period of time, and during that time his wife had taken on the financial responsibilities of

providing for the household. There was no contractual obligation that required the debtor to

repay his wife any of the monies incurred by her for household expense. Even though the debtor

did not believe there was a legal obligation to repay his wife, he felt a responsibility as a husband

to compensate his wife for expenses incurred on his behalf.

In North Carolina it is generally recognized that "[a] husband has a duty to support his

family." McClure v. McClure, 64 N.C. App. 318, 320, 307 S.E.2d 212, 215 (N.C. Ct. App.

1983) (citing Richie v. White, 225 N.C. 450, 542-53, 35 S.E.2d 414, 415 (1945)). However, the

Court of Appeal of North Carolina has recognized that, "even though a husband has a duty to

13

support his family, the wife has no right to reimbursement from the husband for family support expenditures from her separate estate made with her knowledge and consent." <u>Id.</u> at 321, 307 S.E.2d at 215. Therefore, although Mrs. Lawrence took on the responsibility of providing for the household while her husband was out of work, she had no right to repayment from her husband for those expenses. Because Mrs. Lawrence had no right to payment, she had no claim against the debtor. Since she had no claim against the debtor, she cannot be a creditor under § 101(10).

Based on the facts, Mrs. Lawrence was not a creditor of the debtor prior to the transfer. Thus, the trustee has failed to meet all the necessary elements under § 547(b), and the transfer is not avoidable as a preference.

## CONCLUSION

Based on the foregoing, the court concludes that the trustee has failed to establish his entitlement to recover on any of his claims. The court denies the relief requested in the complaint. The clerk is directed to enter judgment accordingly.

**"END OF DOCUMENT"**